## Commonwealth v. Moore, Appellant.

Argued November 20, 1970. Before BELL, C. J., JONES, COHEN, O'BRIEN and POMEROY, JJ.

366

*Lawrence Goldberg,* for appellant.

*Joseph D. Grano,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, June 28, 1971:

Appellant was convicted by a jury of second degree murder and was subsequently sentenced to a prison term of five to fifteen years. The Court of Common Pleas denied appellant's post trial motions, and Harold Moore has now brought this direct appeal from the judgment of sentence.

The record discloses the following factual background. During the early evening of June 30, 1967, one Robert Whitaker, the deceased, left the residence of a friend he was visiting and proceeded to a bar at the corner of 20th Street and Susquehanna Avenue in Philadelphia. At that corner he became involved in a fight with a James Williams, and Williams called for help from his friends (the "Alkey Gang"). Approximately eight men jumped on the deceased and began beating him. There was eyewitness testimony that appellant was among those striking Robert Whitaker. During the fight, Whitaker was stabbed several times by a Charles Leftenant and was hit in the head with a stick by a James Hill. He died at approximately 12:05 a.m. on

July 1, 1967, from multiple stab wounds to the body. A watch was taken from the deceased during the melee.

In this appeal Harold Moore has raised a number of issues. He contends that the custodial confession he made was involuntary, that the suppression court improperly placed the burden of proof on him to show that the confession was not given voluntarily and that the suppression judge erred in allowing the text of the confession to be read into the record. Appellant next argues that the trial court improperly permitted the Commonwealth to introduce evidence of the corpus delicti after the prosecution had stated that its next witnesses would testify as to the confession and appellant had objected to introduction of evidence of the confession because the corpus delicti had not been proven. Error is further asserted in that the trial court allowed the written confession to go out with the jury. Lastly, appellant argues that the felony murder doctrine should have been totally excluded from the case because the person who inflicted the fatal wound to the deceased was adjudged guilty only of second degree murder.

## I.

Appellant argues that his confession was involuntarily given because he was kept "confused and off-balance" by interrogation over an $11\frac{1}{2}$ hour period, by lack of sleeping quarters, and by the use of relays of police interrogators. He further states that the confession was given only after a lengthy period of confinement and after he had been without sleep for 35 hours.[1]

---

[1] The record discloses the following time table. All events referred to occurred on July 12, 1967.

2:30 a.m. Robert Janifer and three other policemen arrest appellant and his brother at their home.

2:45 a.m. Appellant arrives at police headquarters.

A close reading of appellant's testimony at the suppression hearing, however, shows the actual basis of his claim that the confession was involuntary to have been his fear of being beaten if he did not give the answers he felt the police wanted. This fear did not develop from the actions of any of the policemen who arrested or questioned him[2] but rather from stories he had been told by friends who had been arrested on prior occasions, his own experiences during prior arrests, and his experiences with policemen in his neighborhood. In this respect, appellant has presented a novel question.

In all of the recent decisions of this Court in which we have ruled upon the voluntariness of a confession, the police conduct which allegedly caused the involuntary statement was that of the officers who arrested or interrogated the defendant in connection with the

---

2:45-3:35 a.m. Appellant is left alone in anteroom.

3:35-3:55 a.m. Officer Janifer gives *Miranda* warnings.

3:55-4:00 a.m. Appellant is left alone.

4:00-4:40 a.m. Officer Janifer repeats *Miranda* warnings and begins interrogation. Appellant gives an exculpatory statement.

4:40-5:34 a.m. Appellant is permitted to rest in room alone.

5:34 a.m. Police offer appellant food, but he refuses.

5:35-6:10 a.m. Appellant rests in room alone.

6:10-6:27 a.m. Appellant is placed in a line-up.

6:27-6:36 a.m. Police confront appellant with Charles Leftenant, but the former says nothing.

6:36-11:10 a.m. Appellant is permitted to rest in room alone.

11:10 a.m. Detective McGowan gives *Miranda* warnings and begins interrogation.

11:17-11:25 a.m. Appellant consumes sandwich and coffee; questioning is suspended.

11:25-2:10 p.m. Interrogation continues and appellant makes an inculpatory statement.

[2] Appellant did testify that Officer Janifer, Detective McGowan and two officers on Juvenile detail told him that things would go better if he "talked". All four of those men specifically denied making such a statement, and the suppression judge evidently believed them. We cannot say that such a finding represents an abuse of discretion.

crime to which he confessed. See e.g., *Commonwealth v. Moore,* 440 Pa. 86, 270 A. 2d 200 (1970) ; *Commonwealth ex rel. Johnson v. Rundle,* 440 Pa. 485, 290 A. 2d 183 (1970) ; *Commonwealth v. Taper,* 434 Pa. 71, 253 A. 2d 90 (1969) ; *Commonwealth v. Frazier,* 434 Pa. 36, 252 A. 2d 685 (1969) ; *Commonwealth v. Tabb,* 433 Pa. 204, 249 A. 2d 546 (1969) ; *Commonwealth ex rel. Joyner v. Brierley,* 429 Pa. 156, 239 A. 2d 434 (1968) ; *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A. 2d 426 (1968).

In *Rogers v. Hammond,* 365 U.S. 534, 544 (1961), the United States Supreme Court recognized that this is the usual fact situation. "The attention of the trial judge should have been focused (when deciding the voluntariness question), for purposes of the Federal Constitution, on the question whether the behavior of the State's law enforcement officials was such as to overbear petitioner's will to resist and bring abut confessions not freely self-determined. . . ." See also *United States ex rel. Bishop v. Rundle,* 309 F. Supp. 312, 317 (E.D. Pa. 1970).[3]

We have not previously ruled upon the question whether a confession should be excluded because involuntarily given when the stated motivation for the confession is fear of being beaten engendered not by the arresting or interrogating officers but by appellant's and his friends' prior experiences with the police. The Supreme Court of Illinois, however, recently ruled on this exact question and held, "Nor could defendant's confession be deemed coerced because 'from past experience he knew the police would beat him'. (People v.

---

[3] "This inquiry (as to voluntariness) focuses on the defendant's psychological responses to the pressures exerted by the police during the detention and interrogation that resulted in the confession." Developments in the Law—Confessions, 79 Harv. L. Rev. 938, 793 (1966).

Hanson, 31 Ill. 2d 31, 39, 198 N.E. 2d 815, 819). The State's duty is limited to producing 'all material witnesses connected with the taking of the statement, or explain their absence', and the State is not required to produce all witnesses in defendant's prior encounters with the police." *People v. Jackson*, 41 Ill. 2d 102, 242 N.E. 2d 160, 165 (1968).

This appears to be the proper result. It is highly unlikely that the defendant or his friends could remember the names of the officers who allegedly mistreated them on prior occasions, and the prosecution would thus have little chance of rebutting such testimony. Even if the names of the policemen were known, it is unlikely that they would remember the specific circumstances of arrests or interrogations which may have occurred long before. The suppression hearing record, in consequence, would be heavily weighted in favor of involuntariness of the confession.

Police officers who obtain a challenged confession from an accused whom they have arrested and interrogated should, without question, be required to justify by testimonial evidence the means by which they obtained the confession. It is a far different matter to require police officers, even assuming they could be identified and located, to remember and be prepared to justify any and all action they as officers took on prior occasions. Were that the rule a defendant's self-serving statements would, in all likelihood, go unanswered.

We hold that when, as here, the record indicates that the actions of the officers who arrested and interrogated a defendant with respect to the charge for which he is being tried were constitutionally proper, an allegation that the confession was coerced because the defendant knew from past experiences that "he would be beaten if he did not confess" does not suffice to render that confession involuntary.

## II.

Appellant next argues that the suppression judge, in stating in his oral opinion that "There is no explanation, no satisfactory explanation of why he [Appellant] finally involved himself", improperly placed on him the burden of proving that the confession was involuntary. *Commonwealth ex rel. Butler v. Rundle, supra.* A reading of the Court's opinion, however, shows clearly that in making that statement it was not placing the burden of proof on appellant but showing its belief that appellant had not presented sufficient evidence to rebut that which the Commonwealth had already produced.

## III.

Appellant contends that the suppression court erred when it permitted his confession to be read into the record because no issue had been raised which the text of the confession would help resolve and because hearing the text prejudiced the court in deciding the voluntariness issue. See *Commonwealth v. Christman,* 432 Pa. 455, 459, 247 A. 2d 451 (1968). The whole basis for having the judge and not the jury hear motions to suppress evidence is the belief that the judge, trained in the law and aware of the policies behind exclusion of unconstitutionally obtained evidence, will be able to rule on the questions of law without being influenced because of having knowledge of the evidence which is sought to be suppressed. Certainly, when the motion to suppress is based on an alleged violation of the Fourth (and Fourteenth) Amendment, the suppression court is fully aware of the evidence in question. We see no difference, for this purpose, between motions alleging violations of the Fourth (and Fourteenth) Amendment and those alleging violations of the Fifth (and Fourteenth) Amendment. It is within the suppres-

sion court's discretion to determine whether it wants to hear the text of the confession, and the record in this case gives no indication that the court's ruling on voluntariness was influenced in any respect by a belief that the confession was true. We therefore find no abuse of that discretion.

## IV.

In *Commonwealth v. Leslie*, 424 Pa. 331, 227 A. 2d 900 (1967), we stated that the corpus delicti must be established before a defendant's extra-judicial confession is admissible into evidence. At trial in the present case, appellant attempted to utilize that rule in the following manner. After a number of witnesses had been called by the prosecution, the district attorney, in response to a question by appellant's lawyer, stated that after his next witness he would proceed immediately to introduce the confession into evidence. Appellant then objected to the admissibility of the confession on the ground that the corpus delicti had not been established. The court thereupon permitted the Commonwealth to recall a witness to give further testimony on the issue of the corpus delicti. That testimony involved the identification of a photograph as being that of the decedent.

The court stated that it was permitting this testimony because the picture was not available and in evidence at the time the witness had initially testified. Appellant contends that the picture was available and that the Commonwealth took advantage of a motion made in good faith. Regardless of the availability question, it is clear that "[t]he conduct of the trial is the responsibility of the judge presiding. The order of proof is a matter within the realm of his judicial discretion." *Commonwealth v. Burns*, 409 Pa. 619, 637, 187 A. 2d 552 (1963). The record in this case shows no abuse of that discretion.

## V.

Appellant next contends that the trial court violated Rule 1114 of the Rules of Criminal Procedure when it sent his confession out with the jury during its deliberations. Rule 1114 states: "Upon retiring for deliberations, the jury may take with it such exhibits as the trial judge deems proper. The jury shall not be permitted to have a transcript of any trial testimony nor a copy of the indictment." Appellant's position is that since the confession had been read aloud by a prosecution witness it had thereby become part of the trial transcript and therefore the trial judge had no power to send it out with the jury.

Rule 1114 gives the trial court no discretion with respect to the transcript or the indictment; they may not go with the jury when it retires. It does grant the court discretion with respect to exhibits. There is no question that appellant's confession was physically identified and received as an exhibit. The question is whether it somehow lost that status when it was read aloud to the jury and was thereby incorporated into the transcript. Merely to state the question is to answer it. The confession could not lose the status of an exhibit merely by being read aloud because in no sense had anything happened to change its character. If appellant's position were to prevail, all exhibits consisting of written words, e.g., letters, deeds, wills and statements of various kinds, including confessions, would have to be read by each juror silently to himself in order for them to retain their character as exhibits. Such a procedure would be both time consuming and inefficient, and of no discernible aid to maintaining the integrity of the fact-finding process.

Therefore, as the confession retained its status as an exhibit even though it had been read aloud, the trial court had discretionary power to send it out with the

jury. *Commonwealth v. Schwartz,* 178 Pa. Superior Ct. 434, 445, 115 A. 2d 826 (1955). The trial court exercised its discretion as it did because, as indicated in the opinion of the court *en banc,* the confession was complicated and because it contained references to other participants in the attack by name as well as by nickname. On the record of this case, we find this decision not to have been an abuse of discretion. See *People v. Caldwell,* 39 Ill. 2d 346, 236 N.E. 2d 706 (1968).

## VI.

Appellant's final argument is that the felony murder doctrine (and the possibility of conviction for first degree murder), as a matter of law, should have been eliminated from any consideration in this case because the person who did the actual killing of the decedent, Charles Leftenant, pleaded guilty to murder generally and was adjudged guilty only of second degree murder. Appellant asks how a "non-stabber" such as himself can be punished more severely than the actual stabber.

This argument must fail for two reasons. First, appellant has not shown that he suffered any prejudice from the court's refusal to eliminate the felony-murder doctrine from the jury's consideration. Appellant was convicted of second degree murder and thus was convicted of a crime no higher than that of which Leftenant, the person who administered the coup de grace, was convicted.

Second, the argument fails to take into consideration the fact that all participants in a crime, whatever may be their particular roles, are equally culpable; appellant enjoys no preferred position because someone else actually delivered the blow which caused death, or because someone else actually stole the victim's watch. Act of June 24, 1939, P. L. 872, §1105, as amended; 18 P.S. 5105. *Commonwealth v. Parmer,* 364 Pa. 11, 70 A. 2d 296 (1950). He is therefore subject to the

same felony murder rule, involving as it does the possibility of a conviction of murder in the first degree, as are all other participants. What the trier of fact may have found in a separate trial of one of the other participants, including the actual stabber, is irrelevant in his trial. Thus a jury may find a defendant guilty of voluntary manslaughter even in the absence of evidence of legal passion or provocation, provided the evidence would have supported a murder conviction. *Commonwealth v. Hoffman*, 439 Pa. 348, 266 A. 2d 726 (1970); *Commonwealth v. Harry*, 437 Pa. 532, 264 A. 2d 402 (1970). Likewise, a trier of fact can find an actual murderer guilty of something less than first degree murder although the evidence would have supported such a verdict. Mitigating factors too numerous to catalogue may be present in one case, and not in another. Even if the fact-finders were called to testify in one case as to why they found as they did in another, public policy considerations would require rejection of such proof. *Commonwealth v. Zlatovich*, 440 Pa. 388, 394-97, 269 A. 2d 469 (1970).

As each of appellant's contentions has been reviewed and has been found to be without merit, the judgment of sentence is affirmed.

Mr. Justice EAGEN and Mr. Justice ROBERTS took no part in the consideration or decision of this case.

Mr. Justice COHEN took no part in the decision of this case.