Commonwealth *v.* Crosby, Appellant.

Argued September 26, 1972. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*Herman M. Rodgers,* for appellant.

*Robert F. Banks,* First Assistant District Attorney, with him *Joseph J. Nelson,* District Attorney, for Commonwealth, appellee.

Opinion by Mr. Justice O'Brien, November 30, 1972:

On June 1, 1971, appellant, Amos Crosby, shot and killed his wife, Minnie Crosby, and her boyfriend, Winters Gunther. A jury found him guilty of the voluntary manslaughter of his wife and the second-degree murder of Gunther. After denial of his post-trial motions, he was sentenced and then filed this appeal.

According to appellant, he had previously found Gunther and Mrs. Crosby together in a motel in Warren, Ohio, at which time Gunther had threatened him with a gun. Later, when appellant found his wife talking to Gunther near a little league baseball field, and he approached Gunther in order to talk to him, Gunther reached for something which appellant believed to be a gun. Although the record indicates that Gunther had no gun at the time of the shooting, that appellant was carrying a gun, and that appellant testified that he did not remember the shootings, appellant's trial strategy was apparently to make a claim of self-defense.

Appellant raises only one issue on this appeal. He contends that the court committed reversible error when it refused to permit the appellant's attorney to recall appellant to the stand, at the close of appellant's case. Since appellant had already testified at great length on direct examination and cross-examination, after which his counsel had indicated that he had "no further questions," the district attorney requested an offer and appellant's counsel replied: "I propose to ask Mr. Crosby why he didn't run when he saw Mr. Gunther reach for a gun, and he will say that he was too weak to run." The court refused to permit the question because he believed that appellant had already testified at length on the issue and the proposed answer would constitute, in the court's opinion, a contradiction of his previous testimony.

Our examination of the record does indicate that the episode had been thoroughly covered previously. First, on direct examination, the appellant testified that he was still weak from a recent gallbladder operation. Appellant also testified about retreating as follows: "A. When I got over there and started talking, he [Gunther] leaned over and was reaching for his pocket.

Q. And what did you think he was doing? A. I think (sic) he was getting a gun to shoot me with. Q. And what did you do? A. I don't know, I panicked. I got scared. Q. Well, did you shoot him? A. I don't know. Q. Did you have a gun? A. The Chief of Police said he got one out of my pocket. Q. When you—you've seen this gun. Is it your gun? A. Yes. . . . Q. Do you remember shooting Gunther? A. No, I don't. Q. Do you remember shooting your wife? A. No."

On cross-examination, the same incident was covered twice: First: "Q. All right, now when you walked over there to Mr. Gunther's car and you knew you had a gun with you, and that gun was loaded, was it not? A. I suppose it was. Q. Why were you afraid of Mr. Gunther? A. Because he had pulled a gun on me before. I was afraid of him. Q. All right, you were afraid of him, and knowing that, you approached him, and when you saw him do that, you didn't back away, did you? A. All I wanted to do was talk with him. Q. I understand that, but when you saw him reach, as you say, you didn't back away, did you? A. Yes, I did back away. Q. All right, where did you back to? A. I backed up from the car. Q. How far? A. I don't know how far. Q. When you backed up, what did you do? A. I don't know. Q. Did you leave the area? A. No. When I—the next thing I remember, I went down the street for my wife laying (sic) there. I went down there and I had seen her fall. I went down there to see what was wrong with her."

Then again: "Q. Now when you saw Mr. Gunther reach in the manner you stated, why didn't you back away from there? A. I did back up some. Q. Some. Why didn't you keep on backing? A. I don't know. Q. You don't know? A. When you're scared, you don't know what you're going to do or what's going to happen. You don't remember everything that's going on.

Q. Pardon? A. You don't remember everything that's going on when you're scared. Q. Oh, I see. You had plenty of room to get away from him, didn't you? A. I backed up, but I don't know how far I backed up. Q. Well, he didn't shoot at you, did he? A. I don't know. Q. You don't know. He didn't pull a gun on you, did he? A. I don't know. Q. You didn't see any gun, did you? A. I didn't see one. Q. All right, and you don't remember whether you shot him or not?"

Thus, appellant had already testified as to his weakened condition and as to his inability to remember what happened after he backed away, when he thought he saw Gunther draw a gun. We can find little harm in the proffered question because, although we do not agree with the defense counsel that the answer contains important new matter inadvertently missed, we do not believe, as did the trial court, that permitting the question would permit the appellant to present a second completely different version of his previous testimony.[1] Nevertheless, the decision whether a party may be recalled is, under Pennsylvania law, left to the trial court's discretion. The ruling is not reversible error unless it constitutes an abuse of discretion. *Stern v. Stanton*, 184 Pa. 468, 39 A. 404 (1898) ; *Knoble v. Ritter*, 145 Pa. Superior Ct. 149, 20 A. 2d 848 (1941). We find no such error here.

Judgment of sentence affirmed.

---

[1] Assuming the court was correct in characterizing the proffered testimony as a contradiction of his previous testimony, this would not provide a proper basis for rejection of the offer.