481 A.2d 910

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Dennis STATEN.**

Superior Court of Pennsylvania.

Argued Oct. 17, 1983.

Filed Aug. 24, 1984.

522

Charles M. Guthrie, Jr., First Assistant District Attorney, Reading, for Commonwealth, appellant.

Robert L. Moore, Reading, for appellee.

Before SPAETH, President Judge, and WICKERSHAM, BROSKY, ROWLEY, WIEAND, JOHNSON and HOFF-MAN, JJ.

WICKERSHAM, Judge:

Dorcas Clouser was found dead in her apartment on April 9, 1981. Her death was caused by the application and inhalation of a caustic containing sodium hydroxide. Appellee, Dennis Staten, was charged with Dorcas Clouser's murder and with criminal homicide, burglary, theft, aggravated assault, simple assault, and attempted arson. Appellee filed a notice of alibi defense. The burglary charge was eventually dismissed, but appellee was brought to trial on the remaining charges.

Appellee's jury trial commenced on November 9, 1981 before the Honorable W. Richard Eshelman. The Commonwealth's theory of the case was basically that appellee initially went to the victim's apartment in order to appropriate various stereo components. A friend of appellee's, Rodrique Miller, testified that on April 7, 1981, appellee informed him that he (appellee) intended to take possession of the stereo components by getting the victim or another woman high on drugs. Later that same day, appellee returned to Miller's residence carrying a bag containing stereo parts which appellee later sold to Miller. Miller also testified that two days later, on April 9, 1981, appellee asked Miller if he had seen the news reports of Dorcas Clouser's death and asked Miller to throw the stereo components in the river.

Another Commonwealth witness observed the victim and the appellee at the victim's apartment on April 7, 1981 at about 6:00 p.m. The same witness observed appellee's car parked in the vicinity of the victim's apartment at approximately 7:30 p.m. on the same evening.

After three days of trial, the pathologist who performed the autopsy on the victim on August 10, 1981 took the stand. The doctor fixed the time of Ms. Clouser's death at or about 8:15 p.m. on April 8, 1981. The doctor was eventually excused from the witness stand and the Commonwealth continued to present its case. At a later time, the Commonwealth requested permission to recall the pathologist to clarify or attempt to correct the problem which had developed in the medical testimony. Defense counsel objected, and the trial judge refused to allow the recall.

At the close of the Commonwealth's evidence, appellee demurred to the evidence. Since much of the Commonwealth's testimony placed appellee at the scene and with the victim on April 7, whereas the date of death was fixed at April 8, the trial court sustained the appellee's demurrer. Judge Eshelman explained:

The Commonwealth's evidence was clearly insufficient to allow the jury to find [appellee] guilty on the homicide charges. On the one hand, the Commonwealth, by the pathologist's testimony, established that the victim died on the evening of April 8, whereas all of the other evidence of the Commonwealth showed that [appellee] was last seen in the vicinity of the victim's apartment building on the evening of April 7. There was not a scintilla of evidence which placed [appellee] in Ms. Clouser's neighborhood, let alone in her company or in her apartment, on the evening of April 8, 1981. Further, the proof adduced at trial regarding time of death was in irreconcilable conflict with the charge set forth in the information that "on the same day and year [April 7, 1981] ... [appellee] did feloniously, willfully, deliberately, intentionally and premeditatedly, kill one Dorcas Clouser, and the said victim, being so mortally wounded, did die on April 7, 1981, between 6:00 p.m. and 8:00 p.m."

Where time is of the essence of the offense, such a discrepancy is fatal to the Commonwealth's case. *Commonwealth v. Boyer*, 216 Pa.Super. 286, 264 A.2d 173 (1970). Since [appellee's] reliance on an alibi defense

made time of the essence in this case, *Commonwealth v. Boyer, supra,* it would have been error to deprive [appellee] of this defense by allowing the jury to find him guilty of killing Dorcas Clouser at any time other than April 7 between 6:00 and 8:00 p.m. as charged. Yet, as stated above, the Commonwealth's only probative evidence of the actual time of death, i.e. the evening of April 8, made impossible a conviction predicated on the April 7 date and time as charged.

Lower ct. op. at 5–6.

The lower court also held that the Commonwealth's evidence was insufficient to allow the remaining charges to go to the jury. The Commonwealth filed this timely appeal.

The Commonwealth argues that the trial court erred in refusing to permit the Commonwealth to recall its expert medical witness. Before we can address this issue, however, we must first consider the following question:

Is appeal of demurrer by Commonwealth barred by double jeopardy?

Supplemental Brief for Appellant at 1.

Because of our disposition of this appeal, we need not reach the substantive issue presented by the Commonwealth.

This appeal is controlled by *Commonwealth v. Smalis,* 331 Pa.Super. 307, 480 A.2d 1046 (1984). In *Smalis,* an *en banc* panel of this court held:

An order sustaining a demurrer to the evidence under current Pennsylvania practice is a mid-trial determination that the prosecution's evidence is legally insufficient to support a conviction. Pa.R.Crim.P. 1124(a)(1). For double jeopardy purposes it has precisely the same effect as a directed verdict of acquittal. A court has made a determination that upon the evidence presented no rational fact finder could vote to convict the defendant. This is a termination of the trial on a basis related to a factual determination of guilt or innocence. "Under the dispositive [decisions of the Supreme Court] such a ruling of insufficiency, no matter how labeled, represents a conclu-

sion that there has been a failure of proof: that is, there has been an acquittal which is to be accorded the special significance of finality and unreviewability." Strazzella, *Commonwealth Appeals and Double Jeopardy*, 4 Pa. L.J. 11, 12 (1981).

\* \* \* \* \* \*

How, then, can an order sustaining a demurrer to the evidence under Pennsylvania practice be distinguished from other insufficiency determinations which are not appealable? If it cannot be so distinguished, how can we refuse to follow the decisions of the Supreme Court of the United States which define and apply the Double Jeopardy Clause of the United States Constitution? The answer is that we cannot. Prior Pennsylvania decisions holding that orders sustaining demurrers are appealable by the Commonwealth can no longer be followed. They are at variance with decisions of the Supreme Court of the United States. We hold, therefore, that a mid-trial order holding the evidence insufficient to support a conviction is not appealable by the Commonwealth.

*Id.*, 331 Pa.Superior Ct. at 318, 480 A.2d at 1051 (footnote omitted).

In the case *sub judice*, the trial court sustained appellee's demurrer to the evidence; this constituted a mid-trial determination that the Commonwealth's evidence was legally insufficient to support a conviction. Since further proceedings in this case would be barred by principles of double jeopardy, the Commonwealth has no right of appeal.

Appeal quashed.

JOHNSON, J., filed a dissenting statement.

JOHNSON, Judge, dissenting:

I dissent.

I continue to believe that appellate review of the midtrial determination on the issue of legal sufficiency does not invade any interest protected by the Double Jeopardy Clause of the Fifth Amendment to the United States Consti-

tution. I also believe that the sustaining of a demurrer at the close of the Commonwealth's case-in-chief is not an event which terminates the original jeopardy. *See Commonwealth v. Smalis*, 331 Pa.Super. 307, 480 A.2d 1046 (1984) (Dissenting Opinion of Johnson, J.). *Cf. Richardson v. United States*, —— U.S. ——, ——, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984).