504 A.2d 301

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Dennis STATEN.**

Superior Court of Pennsylvania.

Argued Oct. 17, 1983.

Filed Jan. 31, 1986.

Charles M. Guthrie, Jr., Assistant District Attorney, Reading, for Com., appellant.

Robert L. Moore, Reading, for appellee.

Before SPAETH, President Judge, and WICKERSHAM, BROSKY, ROWLEY, WIEAND, JOHNSON and HOFFMAN, JJ.

WICKERSHAM, Judge:

In a per curiam order the Supreme Court of Pennsylvania on June 21, 1985, 508 Pa. 77, 494 A.2d 1049, remanded this case to us "for consideration of the merits of the double jeopardy issue in view of" *Commonwealth v. Zoller,* 507 Pa. 344, 490 A.2d 394 (1985). We must now determine whether the lower court's grant of a demurrer was proper.

A demurrer to the evidence requires a court to accept as true the evidence presented by the Commonwealth and view that evidence, together with all reasonable inferences therefrom, in a light most favorable to the Commonwealth; then determine whether that evidence is sufficient to support a

verdict of guilty beyond a reasonable doubt. *Common-wealth v. Cugnini*, 307 Pa.Super. 113, 452 A.2d 1064 (1982).

With this standard in mind, we now review the facts of this case. Dorcas. Clouser was found dead in her Reading apartment on April 9, 1981. When discovered, her body was lying face down on a bed, a burned cigarette and ashes and burn marks on the mattress were observed near one of her wrists, a burnt pack of matches was stuck along side of the bed between the two mattresses, and some burn marks were observed on the mattresses. Parts of her body were discolored. A white, powdery substance was scattered around the bed area. Subsequent investigation revealed that three stereo components, all belonging to Michael Farrell, with whom Ms. Clouser resided, were missing from the apartment. The components, together with an electric clock, had been plugged into a common adapter, which in turn had been plugged into a wall outlet. The clock was plugged into the adapter but not into the wall, and the time shown on its face was 7:12.

On April 7, 1981, two days prior to the discovery of Ms. Clouser's body, appellee, Dennis Staten, made three separate visits to Rodrique Miller. During the first visit, which occurred at approximately 5:00 p.m., appellee asked Miller whether Miller wanted to buy a receiver and a turntable, as appellee planned to obtain these components by getting either a woman named Dorcas or one named Lynn high on dysoxin and robbing her. Miller warned appellee not to take any stereo equipment from Dorcas' apartment, because the receiver Dorcas had in her apartment was the same one that Miller had originally sold to Michael Farrell. Appellee replied that he was considering robbing Dorcas because he knew her boyfriend, Farrell, was in jail at the time. Appellee then purchased some dysoxin from Miller and left.

Appellee returned to the Miller residence at approximately 8:00 p.m. that same evening carrying a green duffel bag, which was later identified as the property of Michael Farrell. Miller gave appellee fifty dollars, at which time appellee departed, leaving the bag in Miller's possession and

instructing Miller not to open it until appellee returned. An hour later, Miller examined the contents of the bag and found them to be what he later identified as Farrell's stereo receiver and turntable. Around midnight on April 7, appellee again returned to Miller's house and Miller gave him some additional money for the stereo components. Miller did not see appellee again until two days later, when he came to Miller's house, asked whether Miller had read the newspaper accounts of Dorcas' death, and told Miller to throw the receiver and turntable into the river.

Appellee and Dorcas Clouser were also observed emerging from Ms. Clouser's third floor apartment by a witness, John Scott, at approximately 6:00 p.m. on April 7, 1981. Appellee engaged in small talk with Scott in the vestibule of the victim's apartment building. Around 7:30 p.m. that same evening, Scott observed appellee's car still parked in the general vicinity.

Appellee, Dennis Staten, was charged with Dorcas Clouser's murder and with criminal homicide, burglary, theft, aggravated assault, simple assault, and attempted arson. Appellee filed a notice of alibi defense. The burglary charge was eventually dismissed, but appellee was brought to trial on the remaining charges.

Appellee's jury trial commenced on November 9, 1981 before the Honorable W. Richard Eshelman. The Commonwealth presented the testimony of nineteen witnesses. Expert testimony established that the white, powdery substance found around the victim's bed contained sodium hydroxide, as did certain substances present on the clothing of both Ms. Clouser and appellee. Various relatives, friends, and co-workers of the victim testified that the last time they had seen or talked to the victim was on or before the evening of April 7, 1981. Also giving crucial testimony were John Scott, Rodrique Miller, and the victim's boyfriend, Michael Farrell. Farrell testified, *inter alia*, that on May 13, 1981, while both he and appellee were incarcerated at the Berks County Prison, they had a chance confrontation and conversation and appellee admitted killing Ms. Clouser.

After three days of trial, Dr. Neal Hoffman, the pathologist who performed the autopsy on the victim on April 10, 1981 took the stand. He testified that her death was caused by the application and inhalation of a caustic substance containing sodium hydroxide. Finally, in response to direct questioning, he fixed the time of Ms. Clouser's death at or about 8:15 p.m. on *April 8,* 1981. The doctor was eventually excused from the witness stand and the Commonwealth continued to present its case. At a later time, the Commonwealth requested permission to recall Dr. Hoffman to clarify or attempt to correct the problem which had developed in the medical testimony. Defense counsel objected, and the trial judge refused to allow the recall.

At the close of the Commonwealth's evidence, appellee demurred to the evidence. Since much of the Commonwealth's testimony placed appellee at the scene and with the victim on April 7, whereas the date of death was fixed at April 8, the trial court sustained the appellee's demurrer. Judge Eshelman explained:

The Commonwealth's evidence was clearly insufficient to allow the jury to find [appellee] guilty on the homicide charges. On the one hand, the Commonwealth, by the pathologist's testimony, established that the victim died on the evening of April 8, whereas all of the other evidence of the Commonwealth showed that [appellee] was last seen in the vicinity of the victim's apartment building on the evening of April 7. There was not a scintilla of evidence which placed [appellee] in Ms. Clouser's neighborhood, let alone in her company or in her apartment, on the evening of April 8, 1981. Further, the proof adduced at trial regarding time of death was in irreconcilable conflict with the charge set forth in the information that "on the same day and year [April 7, 1981] ... [appellee] did feloniously, willfully, deliberately, intentionally and premeditatedly, kill one Dorcas Clouser, and the said victim, being so mortally wounded, did die on April 7, 1981, between 6:00 p.m. and 8:00 p.m."

Where time is of the essence of the offense, such a discrepancy is fatal to the Commonwealth's case. *Com-*

*monwealth v. Boyer,* 216 Pa.Super. 286, 264 A.2d 173 (1970). Since [appellee's] reliance on an alibi defense made time of the essence in this case, *Commonwealth v. Boyer, supra,* it would have been error to deprive [appellee] of this defense by allowing the jury to find him guilty of killing Dorcas Clouser at any time other than April 7 between 6:00 and 8:00 p.m. as charged. Yet, as stated above, the Commonwealth's only probative evidence of the actual time of death, i.e. the evening of April 8, made impossible a conviction predicated on the April 7 date and time as charged.

Lower ct. op. at 5–6.

The lower court also held that the Commonwealth's evidence was insufficient to allow the remaining charges to go to the jury. The Commonwealth filed this timely appeal.[1]

The Commonwealth argues that the trial court erred in refusing to permit the Commonwealth to recall its expert medical witness. We agree.

The Commonwealth states the issue for our consideration as:

Did the trial court err in refusing to permit Commonwealth to recall an expert medical witness to explain previous testimony believed by Commonwealth to be in error with respect to time of death since the absence of such correction resulted in granting of demurrer?

Commonwealth's Argument Brief at 3.

■ The question before us, therefore, is whether Judge Eshelman's order sustaining the demurrer should be reversed on this appeal. We know that if we should reverse and grant a new trial, such procedure would not offend double jeopardy. *See Zoller, supra.*

---

1. Predicated on our opinion in *Commonwealth v. Smalis,* 331 Pa.Super. 307, 480 A.2d 1046 (1984), we originally quashed the Commonwealth's appeal in the instant case. *See Commonwealth v. Staten,* 332 Pa.Super. 521, 481 A.2d 910 (1984). Due to the reversal of *Smalis* by our supreme court in *Commonwealth v. Zoller,* 507 Pa. 344, 490 A.2d 394 (1985), the instant case is again before us. We note, however, that on November 4, 1985, the Supreme Court of the United States granted certiorari in *Smalis* at —— U.S. ——, 106 S.Ct. 307, 88 L.Ed.2d 285.

The precise offer of the prosecuting attorney at trial was as follows:

MR. BUCCI: On the record I would state that I wish to recall my witness, Neal Hoffman, to clarify, to attempt to correct the problem which has developed in the medical testimony. Medical testimony has now placed the time of death at a day later than almost 24 hours after the witnesses placed the defendant at the scene of the crime. Would Your Honor rule on my request?

MR. MOORE: I would strongly object to recalling Dr. Hoffman.

THE COURT: I sustain the objection. I feel that his testimony was clear and you had an opportunity to question him with respect to the opinion as to the lapse of time since the occurrence of death, and even broaden or liberalize his opinion of 36 hours, but he chose to adhere to that and I don't feel that I can now allow you to have him come back and give different testimony.

Record at 278.

We agree with the Commonwealth that the lower court abused its discretion in not allowing the recall of Dr. Hoffman. The notes of testimony at the preliminary hearing reveal that in his testimony at that proceeding, Dr. Hoffman placed the time of death some 12 to 28 hours earlier than the 36 hours he testified to at trial. It is apparent that the Commonwealth was surprised by Dr. Hoffman's trial testimony and that the district attorney needed time to review his notes and have the expert witness review his reports.[2] It is also apparent from the record that the court knew that not only would a refusal of the Commonwealth's request for recall of the witness precipitate a defense request for a demurrer, but that should such motion be made, the court would grant it.

The decision as to whether a party may be recalled is left to the trial court's discretion, *Commonwealth v. Martinez,*

___

2. We note in passing that this was the first time Dr. Hoffman had ever testified in a jury trial in Pennsylvania.

498 Pa. 387, 446 A.2d 899 (1982), and will not be reversed unless it constitutes an abuse of that discretion. *Commonwealth v. Crosby*, 450 Pa. 68, 297 A.2d 114 (1972). For example, the trial court in another murder prosection, did not abuse its discretion in permitting the Commonwealth to recall a witness to give further testimony on the issue of corpus delicti after the defendant had objected to the admissibility of his confession on the ground that a corpus delicti had not been established. *Commonwealth v. Moore*, 443 Pa. 364, 279 A.2d 179 (1971).

■ Similarly, it has long been the law that the trial court has the discretion to permit either side to reopen its case to present additional evidence. *Commonwealth v. Evans*, 488 Pa. 38, 410 A.2d 1213 (1979); *Commonwealth v. Mathis*, 317 Pa.Super. 362, 464 A.2d 362 (1983). For example, even where the defendant demurred at the close of the Commonwealth's case in a theft prosecution, arguing that the Commonwealth had failed to establish the value of the stolen items, we held that the court did not abuse its discretion in allowing the prosecution to reopen its case to show value. *Id.* The test for reopening a criminal case is whether a failure or miscarriage of justice would occur. *Commonwealth v. Strunge*, 287 Pa.Super. 212, 429 A.2d 1176 (1981); *Commonwealth v. Ridgely*, 243 Pa.Super. 397, 365 A.2d 1283 (1976).

■ It is clear that a heinous crime had been committed. There was overwhelming evidence that appellee had designs on the victim's property and was with her at her apartment two days before her body was discovered, the day after which her friends and relatives were unable to reach her. There was even evidence of his admission of guilt. To not allow the Commonwealth the opportunity to recall Dr. Hoffman, in an attempt to clarify the time of death, seems to us to be a miscarriage of justice. While we cannot guess what Dr. Hoffman would have said upon recall, we must find that the trial court abused its discretion in not allowing the Commonwealth the opportunity to recall its expert witness, especially since such refusal resulted in an order dismissing the charges against appellee.

█ Furthermore, even if we did not find abuse of discretion in the refusal to allow Dr. Hoffman's recall, we cannot agree with the trial court that the grant of a demurrer was proper in this case. The criminal complaint against Dennis Staten accused him of, *inter alia,* the crime of murder in that *"on or about 4/7/81* between 6:00 P.M. and 8:00 P.M." he did cause the death of Dorcas Clouser (emphasis added). The Commonwealth introduced evidence that Staten and the victim were together on April 7, 1981 and that the victim sustained a violent death by criminal means on April 8, 1981, the cause of death being the application and inhalation of a strongly caustic substance which burned her face, her mouth and her respiratory tree, including her lungs. The burns were consistent with those caused by sodium hydroxide or caustic soda. The testifying pathologist also identified during the autopsy various evidence of trauma to the head, neck and shoulder area—"considerable amount of force to cause the injury." (N.T. 244). The Commonwealth further proved a statement by appellee in which he admitted causing her death.

In *Commonwealth v. Rouse,* 207 Pa.Super. 418, 218 A.2d 100 (1966), the defendant was charged with several crimes 'on or about November 15, 1964.' In *Rouse,* it was also argued that the Commonwealth failed to prove that the offenses occurred on the same date as that set forth in the indictment. In response, this court stated:

> It is well established in this jurisdiction that the Commonwealth is not restricted to proof of the crime on the exact date stated in the indictment.... In the prosecution of ... crimes in which a particular date or day of the week is not the essence of the offense, the Commonwealth's burden is to prove the commission of the crime upon some date fixed with reasonable certainty and within the prescribed statutory period.

*Id.,* 207 Pa.Superior Ct. at 421–22, 218 A.2d at 102.

Rule 213(a)(3) of the Pennsylvania Rules of Criminal Procedure provides:

(a) An indictment shall be signed by the attorney for the Commonwealth and shall be valid and sufficient in law if it contains:

\* \* \* \* \* \*

(3) the date when the offense is alleged to have been committed if the precise date is known ... provided that if the precise date is not known or if the offense is a continuing one, an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient[.]

The Rules make clear that the precise date of an offense need not be known in all cases.

We believe that the trial judge abused his discretion in granting the demurrer to the Commonwealth's evidence. At the point in the trial where the court rulings took place, the Commonwealth had clearly established a case for presentation to the jury: a violent death by criminal means, a motive on the part of defendant, circumstantial and direct evidence of the defendant's presence at the murder scene near to the time of death and an admission of guilt following the crime.

Reversed and remanded for a new trial on the criminal homicide, murder, and theft charges.[3] Jurisdiction is relinquished.

BROSKY, J., files a concurring statement.

WIEAND, J., files a dissenting opinion.

BROSKY, Judge, concurring:

I concur in the result. The testimony of record was sufficient to withstand the demurrer. See *Commonwealth v. Kelly*, 237 Pa.Super. 468, 352 A.2d 127 (1975).

---

**3.** The Commonwealth does not oppose the demurrer as to the charges of aggravated assault, simple assault, and attempted arson.

# 183

WIEAND, Judge, dissenting:

I continue to be of the opinion that the Commonwealth does not have a right to appeal from a trial court's mid-trial determination that the evidence is insufficient to sustain a finding of guilt. My reasons have been stated in *Commonwealth v. Smalis*, 331 Pa.Super. 307, 480 A.2d 1046 (1984). Although *Smalis* was reversed by the Supreme Court of Pennsylvania *sub nom. Commonwealth v. Zoller*, 507 Pa. 344, 490 A.2d 394 (1985), the United States Supreme Court granted certiorari on November 4, 1985.

The majority reverses the trial court's mid-trial determination and remands for a new trial. In my judgment, a second trial is barred by principles of double jeopardy. Because this issue is now before the Supreme Court of the United States, however, judicial economy would best be served by deferring our decision in this case until such time as the Supreme Court has decided whether a retrial will offend the double jeopardy clause of the Constitution of the United States.