# Commonwealth v. Barnett

*George Shotzbarger, assistant district attorney,* for the Commonwealth.
*Robert Dixon,* for defendant Derrick Barnett.
*Paul Herzberg,* for defendant Thomas Brown.
*Alan Yatvin,* for defendant Manuel Rose.

GREENSPAN, *J.,* May 1, 1989 — On January 16, 1988, defendants were arrested and charged with robbery, criminal conspiracy and related offenses arising out of a gunpoint robbery earlier that same day at the Family Variety Store located at 4020 Lancaster Avenue in Philadelphia.

All three co-defendants waived their rights to a jury trial and were tried before this court. Trial commenced on June 2, 1988, and concluded on June 9, 1988, when all defendants were found guilty of all charges. Defendants timely filed post-verdict motions and supplemental motions particularly challenging this court's refusal to allow defendant Brown to reopen in order to present a crucial witness whose testimony, as proffered, would seriously undermine the credibility of the Commonwealth's eyewitness. On December 15, 1988, after hearing oral argument, this court granted new trials

to each of the three co-defendants, finding that such relief was required in the interest of justice.[4] The court's finding that the interests of justice mandated a new trial was not based solely on the refusal to permit the proffered defense witness.[5] Rather, this court found:

"[T]hat the way that the case was tried is deeply troubling to me . . . and that goes to the way that it was done, from the beginning to the end, trying to do it in the midst of [another ongoing] jury trial, where I was very concerned about the jury and their needs. That is no way to dispense justice." (N.T. 12/15/88 at 36.)[6]

In response to the prosecutor's adamant refusal to comprehend why the interests of justice mandated a new trial this court added:

---

4. Only defendant Brown specifically raised this precise claim in the post-verdict motions. However, as this court stated during post-verdict argument: "The proffered evidence goes to all of the defendants equally, because Miss King's testimony certainly went to all equally. . ." (N.T. at 26.) Defendant Rose generally sought a new trial in the interest of justice in his post-verdict motion. Moreover, all defendants joined in arguing this issue at the post-verdict stage.

5. Although not relied on by this court in its grant of a new trial, it may well be nevertheless that the refusal to permit the proffered witness to testify is, in and of itself, error requiring a new trial. *Commonwealth v. Staten,* 350 Pa. Super. 173, 504 A.2d 301 (1986), rev'd on other grounds, 514 Pa. 377, 524 A.2d 896 (1987); *Commonwealth v. Mathis,* 317 Pa. Super. 362, 464 A.2d 362 (1983). See also, *King v. U.S.,* (D.C. Cir., November 17, 1988) (interest of justice test applies to request to reopen case; court abused discretion in denying defense motion).

6. The trial in this case was conducted between sessions of a jury trial over which this court was then presiding. As a consequence, the case was heard in a piecemeal fashion and only several hours a day, sometimes just during the luncheon recess of the jury trial.

"In the end, I have to examine, because I am presented with it, whether it was an appropriate, correct and just trial and I think that the denial of Mr. Herzberg's request at the end was a manifestation of the problem in the way that this trial was tried in the first instance that is really where the trouble lies.

"That is why the interest of justice really is the standard that I have to look to, and when I view that standard, and I look at what occurred in this case, I am deeply troubled; troubled enough such that I do think that the defendants in this case should be given a new trial." (N.T. 12/15/88 at 37.)

After granting the new trials, the court permitted the Commonwealth to make a complete record by questioning the proffered witness, Gerald W. Spivack, Esq., who originally represented a fourth co-defendant who failed to appear in court for trial. (N.T. 12/15/88 at 40-57.) In sum, Mr. Spivack testified that, prior to the preliminary hearing in this case, the Commonwealth's putative eyewitness, Ms. King, told him: "[S]he knew nothing about it. She said that she didn't see anything and didn't know anything about it." (N.T. 12/15/88 at 45.) In response to the Commonwealth's erroneous suggestion that this testimony "would not have changed your verdict one iota" (N.T. 12/15/88 at 62) this court answered:

"To tell you the truth, given Renee King's clear bias, the fact that she indicated that she didn't see anything, does really shed light on the fact that she may well have been testifying to be helpful to the Commonwealth for her own benefit; the fact that she was on parole; that kind of thing. She may really have been pushed into it, and had a significant bias. . ." (N.T. 12/15/88 at 64-5.)

Still stubbornly refusing to comprehend the reason for the grant of a new trial, the prosecutor completely misstated the court's decision. This court then reiterated unequivocally:

"The single and sole reason why I am granting a new trial in this case is in the interest of justice, because these defendants, in my view when I reviewed the record in its entirety, were denied justice, and in the interest of justice, I am granting them [an opportunity to have] a fair trial. It is not solely because and it is not confined solely to the fact that I denied Mr. Herzberg the opportunity to present Mr. Spivack. I will say again: that is only one manifestation of the lack of a fair trial here, for which, in the interest of justice they get a new trial." (N.T. 12/15/88 at 67.)

After a thorough review of the record in this case and a painstaking search of this court's conscience, one conclusion was clear and compelling: these defendants had not been afforded a fair trial. The only relief available to remedy this grave error was to grant these defendants a new trial. To turn a blind eye to an injustice is to abrogate judicial responsibility. This court was deeply troubled by the piecemeal manner in which this case was tried. In an effort to be as efficient with courtroom time as possible, this court heard this case while presiding over a jury trial. In retrospect this court recognized that its quest for judicial efficiency had inexorably led to a rush to judgment in this case — a need to expedite for its own sake. The singular attention required of a fact finder in an individual criminal case was jeopardized for the sake of the broader goal to administer justice quickly. Challenged by defendants for having given them less than the Constitution and our system of justice guaran-

tee them, the court admitted to its own misgivings about the manner in which the trial had been conducted.

It is beyond cavil that this court had the judicial authority to order new trials where, as here, such relief is compelled by the interest of justice. As the Pennsylvania Supreme Court stated in *Wylie v. Powaski*, 422 Pa. 285, 286, 220 A.2d 842, 842 (1966):

"This court has declared repeatedly and without modification or reservation that '[t]he granting of a new trial is an inherent power and immemorial right of the trial court and an appellate court will not find fault with the exercise of such authority in the absence of a clear abuse of discretion.' "

There is no doubt in this court's mind that defendants did not receive a fair trial. This court takes its obligation to review challenges to its own verdicts just as seriously as it takes challenges to verdicts reached by a jury. Discretion and judgment are the cornerstones of judicial behavior. Humility, honesty and integrity are equally crucial judicial attributes. To be a fair and impartial jurist is to combine the best of all of these.

The people of this Commonwealth have placed their trust in the members of the judiciary — to dispense justice tempered by mercy. The appellate courts of this Commonwealth have vested broad discretion in the trial courts to do and see that justice is done. Here, justice was not done at trial. Justice was accomplished only when defendants were given a new opportunity for a fair trial.

Apparently the Commonwealth is more concerned with efficiency than with justice and has little regard for the value of its own evidence at a new

trial. The Commonwealth merely argued that defendants got an undeserved windfall. Indeed, during post-verdict argument the Commonwealth, reduced to platitudes and generalities, twice profaned the "law [as] an ass." (N.T. 12/15/88 at 62, 66.) The Commonwealth cannot and does not understand that it would have been an abuse of this court's discretion to refuse the new trial. For the Commonwealth to succeed on appeal, there must be a showing that this court "palpably" or "capriciously" abused its discretion. *Niklas v. Zarnick,* 411 Pa. 205, 191 A.2d 414 (1963); *Burton v. Boland,* 339 Pa. Super. 444, 446, 489 A.2d 243, 244 (1985). There was nothing capricious in this court's decision as the record demonstrates. This court did not simply change its mind or reconsider its verdict. Rather, the court firmly believed that the proceedings were impaired and unfair, mandating a reversal at the earliest possible stage.

The Commonwealth will ask that the verdicts be reinstated. Necessarily the Commonwealth must argue that defendants were given a fair, albeit not a perfect trial. It is for the Superior Court to decide. If the Superior Court finds that this court cannot admit error and can do nothing but give a fair trial, then the verdicts will be reinstated. Either defendants were given a fair trial or they were not and that wrong has now been rectified. This court believes that the grant of new trial was a correct and proper exercise of judicial discretion, entered in the sound interest of justice.