## Samuel Dosch, Appellant, *v.* John K. Diem.

*Practice—Evidence—Landlord and tenant.*

In an action to recover damages for goods destroyed in an alleged wrongful eviction, the plaintiff may be permitted to introduce in evidence in support of his title to the goods the record of a feigned issue in which the goods were adjudged to him, and this is especially the case where he offers to show that the defendant was the real party in interest in the feigned issue, although not a party of record.

In an action to recover damages for an alleged wrongful eviction, the plaintiff claimed that he was in possession of the premises under an oral lease.   The defendant claimed that plaintiff's father was in possession under a written lease.   Plaintiff's father testified that he had heard plaintiff and defendant make the oral lease.   On cross-examination the father was asked whether he had not taken out insurance on the property on the premises in his own name after possession had been taken.   *Held*, that the question was allowable for the purpose of laying a foundation for attacking the witness's credibility.   *Held* also, that it was proper to admit evidence tending to contradict the witness as to the insurance.

*Landlord and tenant—Evidence—Wrongful eviction.*

In an action to recover damages for a wrongful eviction where the plaintiff claims under an oral lease from the defendant, and the defendant claims that plaintiff's father was in possession of the premises under a written lease, declarations of the father made in the absence of the son are not evidence as against the son's title.   In such a case, to show that the son at times heard of the declarations of his father made to third parties did not impose upon him the duty of denying them and accusing

his father of falsehood; and such declarations could not have the effect of destroying the son's title if it was otherwise good.

*Practice, C. P.—Trial—Order of testimony—Discretion of court.*

The order in which testimony is admitted is within the discretion of the trial court, and a very gross abuse of this discretion will have to be manifest to induce a reversal.

Argued May 18, 1896. Appeal, No. 25, Jan. T., 1896, by plaintiff, from judgment of C. P., Lancaster Co., Dec. T., 1892, No. 34, on verdict for defendant. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass for alleged wrongful eviction. Before BRUBAKER, J.

At the trial plaintiff made the following offers:

Plaintiff offers to show by this witness, Samuel Dosch, that he was the plaintiff in a suit in this court, in which John K. Diem was the use defendant, in which the title to certain of this property was the subject of legal adjudication, as the best evidence of the title—a suit to determine this very question as to who owned this property, which was resisted by this very man.

Offer objected to by the defendant's counsel. Objection sustained. Bill sealed. [1]

Plaintiff offers to prove by the records of this court in the suit-to September term, 1892, No. 47, that the question of the title of Samuel Dosch in part of the property for which damages are here claimed was the subject of legal adjudication in that suit and was determined in favor of the plaintiff.

Objected to by the defendant's counsel. Objection sustained. Bill sealed. [2]

Plaintiff offers in evidence the record of the suit of Samuel Dosch against Christian Z. Beiler and J. B. Smoker, assignees of B. K. Smoker and wife, September term, 1892, No. 47, to be followed by proof that the judgment out of which that suit in interpleader arose was to the use of John K. Diem, that he was the actual use plaintiff in the judgment and execution, and was the actual defendant in the issue tried to September term, 1892, No. 47.

Objected to by the defendant's counsel. Objection sustained. Bill sealed. [3]

When Adam Dosch was on the stand defendant asked the witness, for the purpose of testing his credibility, if in May, on or about May 28, 1892, after they were on this property of Diem whether he, Adam Dosch, didn't have an additional insurance put on the contents of the barn and the contents of the house on the farm of John K. Diem, which was objected to by the plaintiff's counsel.

By the Court. Allowed, for the purpose of affecting his credibility. Bill sealed.

A. Not to my knowledge. Q. Do you know John D. Buckwalter? A. I did know Buckwalter. Q. Was he an agent for the Penn Township Mutual Fire Insurance Company? A. I can't tell you whether he was an agent or what he was. Q. Did you have your insurance in May, 1892, increased through Buckwalter for the contents of the house and barn on Diem's farm? A. Not to my knowledge. [4]

Buckwalter testified as follows :

Q. Did or not Adam Dosch have property insured against fire in said company as per entry on page 128 of said book on June 19, 1891 ? If so, state what you know concerning it.

Question objected to by the plaintiff's counsel. Objection overruled. Question admitted. Bill sealed.

A. Adam Dosch had property insured as described in entry on page 128 of said book. Entry dated June 19, 1891, which entry I identify by my initials in margin, which is lettered " A." All I know further is that Adam Dosch had the property insured, and I think his name will be found on application in hands of the company.

Q. Did or not Adam Dosch have additional insurance against fire effected with said company for property on the farm or property of John K. Diem near Roland's church, Lancaster county, Pa., as per entry on page 129 of said book? If so, state your knowledge concerning the same. A. He did; as shown by said entry on page 129 of said book, which I identify by my initials in the margin, and which is lettered " B." As I recollect he said he wanted the additional insurance because he had moved to a larger place and had more property on that account. [5]

Henry B. Leaman, being recalled by the defendant and examined by Mr. Eshleman testified as follows :

Q. How long have you known Samuel Dosch? A. Seven

years. Q. Are you acquainted with his general reputation in the neighborhood for truth telling?

Objected to by the plaintiff's counsel. Objection overruled. Bill sealed.

A. Not very good. Q. From that general reputation would you or not believe him on oath? A. No, sir. [6]

Henry Hoar, called by defendant, in surrebuttal testified:

Q. Do you know Samuel Dosch? A. Yes, sir. Q. How long? A. Since he was a boy. Q. Are you acquainted with his reputation for telling the truth?

Objected to by the plaintiff's counsel. Objection overruled. Bill sealed.

A. Yes, sir. Q. Is it good or bad? A. Not very good. Q. Would you believe him on oath, in consequence of that reputation?

Objected to by the plaintiff's counsel. Objection overruled.

A. I would not. [7]

William Lewars was called for defendant in surrebuttal and testified:

Q. Do you know Samuel Dosch? A. Yes, sir. Q. Do you know what the people say about his truth telling character?

Objected to by the plaintiff's counsel. Objection overruled. Bill sealed.

A. It is not very good. Q. In consequence of what the people say about him would you believe him on oath?

Objected to by the plaintiff's counsel. Objection overruled. Bill of exceptions signed, sealed and filed for the plaintiff.

A. I certainly would not believe him on oath. [8]

The court charged in part as follows:

[For the purpose of contradicting the father—because the father swears the contract was made with his son after the cancellation of this contract—they produce a written lease showing the fact that they had been on the farm for three or four months at the time of the change; that the father had made changes in that original lease and accepted the premises, and that Samuel knew that he had done so. Now that was for the purpose of contradicting the old gentleman, and for the purpose of showing also that Samuel, the plaintiff in this case, knew that his father had signed the lease. If that be the case, then it would be safe

for you to say that Samuel could not have been the tenant, but that Adam Dosch was the actual tenant.] [9]

[Squire Slack said when they met he read over this long agreement, item by item, and made the changes that were made in that agreement, and that Adam Dosch then signed the agreement. Adam Dosch said he signed the agreement. He does not deny it. And if he did that, and his son knew that he went there for the purpose of making those changes in the lease, then it would be safe for you to say that Adam Dosch was the tenant, and the son Samuel was not the tenant.] [10]

[After they moved to the Diem farm, the evidence shows to you conclusively that the father had the insurance increased $650, and the insurance was taken in the father's name again. Now that would be evidence to show to you that the father was the tenant and not Samuel Dosch. But shortly before this writ of dispossession from Squire Slack was issued, Samuel goes over there—I think his mother was present, and the agent, Mr. Buckwalter, says he believes the father was present—Samuel says his mother was there—all these goods were insured then in the name of Samuel, for which he holds the policy. Now that is strong corroborative evidence on the part of the defendant's case, if you believe it, to show that Samuel was not the tenant.] [11]

[You have also the testimony of a number of neighbors around the community there, some of whom are craftsmen, one was a blacksmith and another a miller, the parties with whom Adam Dosch had had conversations, who say positively that Adam said he was the tenant on that farm.] [12]

[Now it is for you to say, when you come to weigh this testimony, to which party you will give credence, in order to arrive at the truth and justice in this case. For, if the plaintiff has trumped up a case of this character for the purpose of endeavoring to steal a portion of the proceeds of this farm, then I say that his case should be kicked out of court.] [13]

[There is another ingredient that ought to be taken into consideration by you, and that is, whether the son could have accumulated that large amount of money by that time, and whether he did accumulate that large amount of money.] [14]

[Whatever your verdict may be, by giving the case careful and deliberate consideration it will end the case. We will not try it over again.] [15]

Verdict and judgment for defendant.    Plaintiff appealed.

*Errors assigned* were, (1–8) rulings on evidence, quoting the bills of exceptions; (9–15) above instructions, quoting them.

*H. M. Houser* and *W. U. Hensel,* with them *J. Hay Brown,* for appellant.—Samuel Dosch cannot be prejudiced or affected in any way by the conversations or declarations of Adam Dosch to which he was not a party.    Even if Adam Dosch had set up a claim adverse to Samuel's and had contended for it, Samuel would not have been bound by his mere knowledge of the circumstances.

The charge of the court was misleading and unfair: Winters v. Mowrer, 163 Pa. 239; Com. v. Bowman, 37 W. N. C. 229; Kauss v. Rohner, 172 Pa. 488; Coxe v. Derringer, 82 Pa. 236; Heydrick v. Hutchinson, 165 Pa. 208; Cauffman v. Long, 82 Pa. 72; McFadden v. Reynolds, 20 W. N. C. 314; Bughman v. Byers, 21 W. N. C. 494; Gehman v. Erdman, 105 Pa. 371; Reber v. Herring, 115 Pa. 599; Shaver v. McCarthy, 110 Pa. 339; Schwenk v. Kehler, 122 Pa. 77.

*B. F. Davis* and *B. Frank Eshleman,* for appellee.—The record of a judgment can affect only parties and privies: Shulze's App., 1 Pa. 251; Giltinan v. Strong, 64 Pa. 242; Chandler's App., 100 Pa. 262; Timbers v. Katz, 6 W. & S. 290; Coffman v. Hampton, 2 W. & S. 377; Cochran v. Sanderson, 151 Pa. 591; Williams v. McNeal, 3 Kulp, 37; Hoffman v. Coster, 2 Wharton, 453; Graham v. Smith, 25 Pa. 323; Bellas v. McCarty, 10 Watts, 13; Withers v. Livezey, 1 W. & S. 435.

We had a right to inquire into the insurance to affect the credibility of an obviously untruthful witness: Markley v. Swartzlander, 8 W. & S. 172; Bank v. Fordyce, 9 Pa. 275; Huoncker v. Merkey, 102 Pa. 462; Bohan v. Avoca, 154 Pa. 404.

The order of testimony is with the court below, and the Supreme Court will not reverse for that reason: Amrhein v. Clausen, 155 Pa. 93.

The whole of the charge must be taken together when a charge of inadequacy or unfairness is made against it, and we think, considered in that way, it was a fair presentment of both

sides: Evans v. Evans, 155 Pa. 572; Burr v. Sim, 4 Wharton, 150; Brinser v. Longenecker & Bausman, 169 Pa. 51. At best the complaints of appellant as to expressions of opinion by the trial judge are not grounds for reversal; the jury were left free to form a different conclusion: Didier v. Penna. Co., 146 Pa. 582; Follmer v. McGinley, 146 Pa. 517.

OPINION BY MR. JUSTICE DEAN, July 15, 1896 :

Deim, defendant, leased to Adam Dosch, father of plaintiff, by written agreement dated November 13, 1891, his farm in Leacock township, Lancaster county, known as the Groff farm, for the term of one year from April 1, 1892, at a cash rent for grass of $40.00, and one half of all crops. At the date of this writing Adam Dosch lived on the Berton farm, and his son Samuel who had just been married lived with him. At the trial in the court below, the plaintiff, the son, alleged and adduced much testimony tending to show that this written lease was canceled by the consent of the parties to it, and that then Deim entered into a verbal contract with him to rent the farm to him on substantially the same terms as those in the written lease to the father. Further, that in the performance of this verbal contract he purchased farm stock and implements, and moved on the Groff farm on April 3, 1892, the father's family going along and taking up their abode in the house with him, the son. Samuel proceeded to plant spring crops and do the work of a tenant on the farm; also, as he alleged, paid to Diem one quarter of the cash payment when it fell due, about the 1st of July following his occupancy. The cancellation of the written agreement with the father, the oral contract with the son and the payment of rent by the son as tenant were all flatly denied by Diem, and he adduced much testimony tending to sustain this denial; he alleged the father alone was his tenant, and that relation was created by the written contract.

On the 27th of July, 1892, Diem, the landlord, averring rent in arrears under the written agreement, made complaint thereof before a justice of the peace against the father, and in this proceeding judgment was entered in his favor for $299, rent in arrears, and that Adam Dosch, the father, deliver up possession of the premises to his landlord. After notice of this judgment to the father, the justice placed a warrant in the hands of the

constable directed against Adam Dosch commanding him to execute the judgment by redelivery of the possession to Diem of the premises and collection of the costs. After two ineffectual efforts, on the third attempt, in September, the officer put Diem in possession.

In dispossessing the two Dosches, father and son, much damage resulted to the stock and goods. The evidence showed Diem present directing the movements of the officer and his posse in removing the families and goods. Samuel Dosch, the son, then brought this action against Diem for damages. The question on which the right of plaintiff to recover at all turned was whether at the time he was ejected he was the tenant of Diem; if not a tenant under the oral contract he had no right of action for damages. Nearly one hundred witnesses were called, many of them to testify to facts tending to prove or disprove the cancellation of the written contract with the father and the existence of the oral contract with the son. The learned judge of the court below submitted the evidence bearing on this question as well as that on the amount of damage to the jury, who under the instructions given found for defendant. We have now this appeal by plaintiff with fifteen assignments of error, eight to rulings on offers of evidence and seven to charge of the court.

As to the first three assignments of error, the plaintiff offered evidence tending to show that he had acquired the ownership of certain personal property which he alleged formed part of that thrown out of the farmhouse and levied on for costs. When this offer was made, the cross-examination of plaintiff when on the stand had disclosed an intention by defendant to deny plaintiff's ownership or title to nearly all the property on the farm. He had a right to prove his title to personal chattels by evidence of possession at the date of the alleged trespass; but he was not restricted to this; he might go further and show how he acquired it. The objection that the record offered was of a feigned issue between him and other parties than Diem is not well taken. True, judgments are conclusive only as between parties and their privies; but this was not offered as an adjudication conclusive of plaintiff's title, but as evidence of the channel through which the property came to him, just as if he had offered a receipted bill of sale of the

property, and had proved its genuineness. Such evidence is not conclusive; it may be attacked and discredited; still it is evidence. Besides, the plaintiff went further and proposed to show that although the other nominal party of record to the feigned issue was not Diem yet that he was the real antagonist, and the suit was in fact carried on by him. The court rejected this offer; we think in this there was error.

The fourth assignment is to allowing defendant's counsel to ask Adam Dosch on cross-examination if after possession of the Diem property had been taken he had not taken out insurance on it in his own name. We think in view of the witness' testimony in chief as to the contract with his son made in his presence, this was allowable for purpose of laying foundation for attacking his credibility.

The fifth assignment is to the admission of evidence tending to contradict the witness as to the insurance. There was no error in this, and therefore the fourth and fifth assignments are overruled.

The sixth, seventh and eighth assignments are really to the order in which the court admitted testimony. This is so much in the discretion of the court below that a very gross abuse of that discretion would have to be manifest to induce a reversal. While there was some irregularity here, it is not of that character which could have seriously injured the appellant; therefore these assignments are not sustained.

The ninth, tenth, eleventh and twelfth assignments are to those parts of the charge referring to the conduct and declarations of the father indicating that he was the lessee of the farm, and not his son. We think the complaint as to each of these assignments is well founded. The court seems to have fallen into the error of treating the father and son as conspirators in collusion to defraud Diem, the landlord, and on this theory to have treated the acts and declarations of the father in the absence of the son as evidence against the son's title. The father could not by his independent acts and declarations affect the son's title to the property and his rights as a tenant. To affect the son, he must be proved to have participated in these acts; to have assented to the truth of the declarations of the father. To show that the son at times heard of these declarations of his father made to third parties did not impose

upon him the duty of denying them and accusing his father of falsehood; and certainly they could not have the effect of destroying his title if it was otherwise good; the father could not talk away his son's property, and we think the jury should have been plainly so instructed. In giving undue weight to the conduct and conversations of the father, and in failing to caution the jury as to the proper effect to be given them, we think that the learned judge of the court below erred; therefore, these four assignments are sustained.

There is nothing of merit in the thirteenth, fourteenth and fifteenth assignments of error, and they are overruled, but for those sustained, the judgment must be reversed. It is reversed accordingly, and v. f. d. n. awarded.