512 A.2d 1242

**COMMONWEALTH of Pennsylvania**

v.

**James Earl JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 15, 1986.

Filed July 14, 1986.

126

Gary V. Skiba, Erie, for appellant.

Shad Connelly, Assistant District Attorney, Erie, for Commonwealth, appellee.

Before CAVANAUGH, OLSZEWSKI and KELLY, JJ.

KELLY, Judge:

This case involves an appeal from an order denying the appellant post-conviction relief. The appellant has raised ten issues on appeal. The primary issue raised by the appellant and the only one argued before the PCHA court is whether re-sentencing counsel was ineffective in failing to elicit the appellant's desires regarding an appeal and in failing to advise the appellant as to the effect of the order granting his motion to withdraw his original guilty plea on the notice of appeal taken from the original sentence imposed. We find no merit in this appeal and affirm the order of the learned PCHA court.

On January 10, 1979, after a jury trial, the appellant was found guilty of rape and burglary. On May 16, 1979, a second jury found the appellant guilty of a second set of

rape and burglary charges. On June 18, 1979, the appellant pleaded guilty to a third set of charges for rape, burglary and assault.

At the plea hearing on June 18, 1979, the appellant signed a document entitled "Defendant's Statement of Understanding of Rights Prior to Guilty Plea" which contained a clear statement of the appellant's rights with respect to his plea. On August 27, 1979, the appellant was sentenced on all three sets of charges. The sentencing colloquy contained a full and correct statement of the appellant's right to appeal as well as an additional inquiry as to the voluntary nature of the appellant's guilty plea. The appellant and his attorney also signed a document entitled "Right of Appeal Following Sentence," which contained a complete statement of post-sentence rights.

The trial court proceeded to impose sentence upon the appellant as follows:

*At No. 78 of 1979 (Plea: June, 1979)*

Rape: 10 to 20 years imprisonment

Burglary: 5 to 10 years imprisonment, consecutive to imprisonment at No. 78 of 1979, Rape.

Assault: suspended

*At No. 1030 of 1978 (Trial: January, 1979)*

Rape: 10 years probation, consecutive to imprisonment at No. 78 of 1979.

Burglary: 10 years probation, concurrent to imprisonment at No. 78 of 1979

*At No. 273 of 1979 (Trial: May, 1979)*

Rape: 10 years probation, consecutive to probation at 1030 of 1978, Burglary, and concurrent with the imprisonment term imposed at No. 78 of 1979, Burglary.

Burglary: 10 years probation, concurrent with probation at No. 273 of 1979, Rape.

On September 6, 1979, the appellant filed a motion to withdraw his guilty plea, alleging that he did not understand the plea bargain and that he had not been sentenced in accordance with his expectations. Two terms of proba-

tion were imposed consecutively rather than concurrently as had been anticipated. On September 26, 1979, timely notice of appeal was filed. On November 28, 1979, the motion to withdraw the guilty plea was granted by the trial court.[1]

On December 10, 1979, the court ordered that the appellant be returned from state custody to the Erie County Jail by January 9, 1980, in order to give the appellant time to prepare for trial scheduled for January 15, 1980. Plea negotiations continued.

On January 18, 1980, the appellant appeared in court for the purpose of re-entering his guilty plea. The appellant again signed both the documents acknowledging his rights regarding guilty pleas and appeal. The transcript of the sentencing hearing indicates that prior counsel, Miss Fisher, had written the appellant two letters explaining "all the procedures and what was being done." (Re-Sentencing Transcript at 4). The appellant indicated that he understood what was going on.

The court fully explained the plea bargain and stated that the court would accept it. Appellant's attorney, Mr. McGeorge, also explained the bargain. The appellant stated that he understood the bargain. The Court then re-sentenced the appellant in accordance with the bargain as follows:

*At No. 1030 of 1978 (Trial: January, 1979)*
Rape: 10 to 20 years imprisonment
Burglary: 5 to 10 years imprisonment, consecutive to imprisonment at No. 1030 of 1978, Rape.

*At No. 273 of 1979 (Trial: May, 1979)*
Rape: 10 years probation, concurrent with imprisonment at No. 1030 of 1978, Rape.
Burglary: 10 years probation, consecutive to probation at No. 273 of 1979, Rape; concurrent with and overlapping the imprisonment at No. 1030 of 1978, Burglary.

1. *See* Pa.R.A.P. 343.

*At No. 78 of 1979 (plea: June, 1979)*

Rape: 10 years probation, concurrent with probation at No. 273 of 1979, Rape.

Burglary: 10 years probation concurrent with probation at No. 273 of 1979, Burglary

Assault: 10 years probation concurrent with probation at No. 273 of 1979, Rape.

The appellant did not file a motion to withdraw his plea, a motion to reconsider the sentence, or a notice of appeal. However, on April 29, 1980, the appellant filed a petition seeking post-conviction relief. After an unsuccessful petition for allowance of appeal *nunc pro tunc*, the appellant was granted a hearing on his amended PCHA petition. The appellant's petition was denied on April 6, 1984. The instant appeal is taken from the PCHA court's order of that date.

Appellant's primary contention on appeal is that the re-sentencing counsel was ineffective for failing to elicit the appellant's "desires in regard to an appeal and in failing to appeal thereafter especially when the Public Defender's staff, of which the attorney was a member, knew that he had previously appealed." (Appellant's Brief at 13). He argues further that:

In the present case, Mr. Johnson was told of his right to appeal and the time limits thereof, but there is no indication that he was ever told that his prior appeal was of no effect. Nor is there any indication of why or how he should have known. There is nothing to rebut his plausible testimony that he wanted his first appeal to continue. In layman's terms the appeal was "filed" within thirty days of the second sentencing—the notice of appeal was docketed in the records of the Superior Court, specifically. Under the unique circumstances of this case, the standard colloquy was inadequate and, to an extent, misleading.

(Appellant's Brief at 17).

In proceedings under the Post-Conviction Hearing Act, the petitioner has the burden of proving ineffective assistance of counsel. *Commonwealth v. Presbury,* 329

Pa.Super. 179, 478 A.2d 21 (1984); *Commonwealth v. McCaskill*, 321 Pa.Super. 266, 468 A.2d 472 (1983). In order for a defendant to be granted collateral relief he must demonstrate a credible claim that he has actually received ineffective assistance. A naked allegation without more will not suffice. *Commonwealth v. Parker*, 503 Pa. 336, 469 A.2d 582 (1983). Furthermore, counsel is presumed competent and will not be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Strickland*, 306 Pa.Super. 516, 452 A.2d 844 (1982).

We note initially that the appellant's theory on appeal is quite different from that urged in the court below. Instantly, he argues he was misled into thinking no action was necessary to perfect an appeal. However, at the PCHA hearing the appellant testified that he spoke to re-sentencing counsel immediately after sentencing, expressing his desire to pursue an appeal. He also testified that he wrote both re-sentencing counsel and the Erie County Clerk of Courts to see if an appeal was in fact taken.

The appellant's self-serving and uncorroborated allegations were rejected by the PCHA court in favor of the testimony of resentencing counsel, Gustave McGeorge. Attorney McGeorge testified that: the appellant did not request that counsel take an appeal; the appellant never wrote asking whether an appeal was taken; the appellant expressed satisfaction with the plea bargain; and when asked, "if there was anything else he needed," the appellant replied, "no." The only letter received from appellant by the Erie County Clerk of Courts was received thirty-seven days after the time for an appeal had expired, and did not indicate that he had requested that counsel perfect an appeal nor did it inquire as to the status of such an appeal. In short, the appellant's allegations below were wholly uncorroborated, directly contradicted, and understandably rejected.

It was for the PCHA court to weigh the credibility of the witnesses and to resolve conflicts in the evidence. Accordingly, the PCHA court rejected the appellant's self-

serving and uncorroborated statements and specifically found that the appellant did not request that counsel file an appeal and that the appellant had in fact made a knowing and intelligent waiver of his right to appeal. PCHA court opinion at 13–15.

■ The PCHA court also rejected the appellant's contention that as an employee of the Office of the Public Defender, counsel should have known that defendant wanted to appeal, since defendant's appeal from the original sentence was a matter of record. PCHA court opinion at 12. The PCHA court stated:

The first sentence was vacated because defendant had withdrawn the guilty plea upon which the sentences for charges at all three docket numbers were based. Defendant re-entered the guilty plea after various negotiations and discussions between defense counsel and the Commonwealth resulted in the Commonwealth's offer to recommend concurrent sentences for all charges [2] upon re-entry of the plea. Since defendant's decision to re-enter the guilty plea was presumably based on the plea bargain, and since the recommended concurrent sentences were imposed, counsel is not ineffective for failing to assume that defendant would want to appeal that sentence which had been agreed upon and actually imposed.

PCHA court opinion at 12.

■ Undaunted by adverse rulings in the court below, the appellant raises yet another theory to explain why his failure to take a direct appeal was the result of ineffective assistance of counsel and not a knowing and intelligent waiver of his right to appeal. Instantly, he contends he was misled by re-sentencing counsel's failure to explain the effect of the order granting the motion to withdraw the original guilty plea on the notice of appeal previously filed.[3] This contention is supported by neither facts nor law.

2. "All charges" at No. 78 of 1979, for which the appellant was entering a plea.

3. *See* Pa.R.A.P. 1701 which provides in pertinent part:

It is true that re-sentencing counsel was not aware that a notice of appeal was filed on September 26, 1979. (H.T. at 24–25). It is also true that re-sentencing counsel never explained to the appellant how Pa.R.A.P. 1701 affected the previous notice of appeal. However, the record establishes that the appellant was not, in fact, misled by the previous notice of appeal.

Indeed, the appellant's current theory is in direct conflict with his testimony at the PCHA hearing. The appellant replied to Assistant District Attorney Connelly's question as follows:

Q: You already testified that you knew you had thirty days to take an appeal. You knew that time was going to run out on you, what did you do?

A: I talked to a few guys, you know, how—what I could do and I think I wrote a letter to the Clerk of Courts to see if—to see if McGeorge had filed an appeal and I never got an answer from that either.

(PCHA Hearing Transcript at 14). Thus in the court below, the appellant claimed that he took direct action to perfect an appeal. His testimony below, therefore, rebuts the suggestion that he was lulled into complacency by the prior notice of appeal. To the contrary, the appellant claimed that he was diligent in pursuing a direct appeal.

Moreover, he never testified, plausibly or otherwise, that he believed that the prior notice of appeal was still in effect. His only testimony regarding the prior appeal was addressed to the issue of whether re-sentencing counsel should have known that the appellant wanted to take an appeal. His actual testimony was:

Q: You were aware that Marilyn Fisher did appeal from your initial sentence, is that correct?

A: Yes.

A timely order granting reconsideration under this paragraph shall render inoperative any such notice of appeal theretofore or thereafter filed or docketed with respect to the prior order, and the clerk of any court in which such an inoperative notice or petition is filed or docketed shall upon praecipe of any party note on the docket that such notice or petition has been stricken under this rule.

Q: And if that had been—if it would have been proper legally to appeal the Superior Court on that basis for that would you have wanted to continue also?

A: Yes.[4]

Q: You mentioned your concern about the sentence. Did you also want to appeal about trial errors?

A: Well, since the trial—since I hadn't originally filed I wanted to file on everything but the jail term in the original appeal. I had discussed that with Miss Fisher when I talked to her about the original appeal and *I stated to her I didn't want to bother with the probation, just the jail time. That I told her. I felt the jail time should have run concurrent and that's how she told me she would file the appeal.*

(H.T. at 16–17) (emphasis added). The appellant, thus, indicated that his sole concern in filing a motion to withdraw his guilty plea and a notice of appeal was whether the jail time imposed should have been imposed concurrently or consecutively. This issue was discussed and resolved in plea negotiations prior to the re-entry of the appellant's guilty plea at the January 18, 1980 resentencing hearing.[5]

Additionally, we note that after the motion to withdraw the original guilty plea was granted, the appellant's case was scheduled for trial. The appellant was ordered to be returned from state custody to the county jail in order that he could participate in the preparation of his defense. All objective manifestations indicated that the previous plea and sentence had been cancelled, and that the case was to proceed as if no plea or sentence had ever been rendered.

In support of his contention that re-sentencing counsel was ineffective in failing to explain the effect of Pa.R.A.P. 1701, the appellant cites *Commonwealth v. Ritchie*, 298

---

4. The notice of appeal was then admitted into evidence.

5. That the appellant may have desired a better plea bargain (i.e.: one that provided for the jail time to be served concurrently) is of no consequence. The actual bargain was fully explained and freely accepted. What is of consequence is that the sole issue which the appellant had sought to raise in his original appeal was resolved prior to his re-sentencing.

Pa.Super. 165, 444 A.2d 712 (1982) and *Commonwealth v. Wilson*, 430 Pa. 1, 241 A.2d 760 (1968). Neither case, however, supports the appellant's contention.

The appellant's reliance upon *Ritchie* is misplaced as it is factually distinguishable in material respects from the instant case. In *Ritchie* we stated:

> Had the defender but once asked appellant whether he wanted to appeal, the problem presented by this case might have been avoided. Instead, he *never informed appellant of his right to appeal, never asked him whether he wanted to appeal, and may well have misled appellant,* for it was clear from appellant's letter of June 3, that appellant wanted to appeal, and by replying to the letter only that appellant would be informed when his transcripts had been filed, the defender may have suggested that filing an appeal could await receipt of the transcripts.

298 Pa.Superior Ct. at 168–169, 444 A.2d at 714 (emphasis added). In the instant case, the transcript of the sentencing hearing, the signed documents, and the testimony of the parties clearly establish that the appellant was fully informed of his right to appeal. There is no indication that the appellant was misled in any way.

The appellant's reliance upon *Wilson, supra,* is likewise misplaced. In *Wilson,* our Supreme Court stated:

> The record below, although it does indicate that appellant may have been told that he could appeal, is completely silent as to whether appellant was at any point informed or was aware that he was entitled to court appointed counsel. *Douglas* [*v. People of State of California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) ] requires that an indigent accused be aware of both rights.

430 Pa. 5, 241 A.2d at 763.

*Wilson* and *Ritchie* require that the appellant be fully informed of his rights on appeal prior to any waiver of his rights. Significantly, the appellant concedes that the statement of rights, absent in *Ritchie* and *Wilson,* was present in the instant case. (Appellant's Brief at 17). The appel-

lant contends, though, that "unique circumstances" required that more than the standard colloquy be conducted, and that a knowing and intelligent waiver could not be made where the appellant was not specifically informed that the prior notice of appeal was not still in effect. We cannot agree.

The record presents no evidence that the appellant in fact harbored any misconception regarding the prior notice of appeal. Nor do we find any evidence that he was in anyway misled. Allegations of prejudice, like allegations of ineffectiveness, cannot exist in a vacuum. *See Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981). Error in the abstract does not require a new trial. *Commonwealth v. Butts*, 495 Pa. 528, 434 A.2d 1216 (1981); *Commonwealth v. Pittman*, 320 Pa.Super. 166, 466 A.2d 1370 (1983).

Furthermore, neither *Wilson* nor *Ritchie* require counsel to anticipate every desire, question, or misapprehension of fact which may linger unexpressed in a client's mind. The appellant was given several opportunities to ask questions and to make statements. We cannot find counsel ineffective for not answering a question which was never asked. Absent a specific inquiry by his client, we see no reason why counsel representing a defendant at the re-entry of a negotiated guilty plea should inform his client of the effect of an order vacating the prior sentence on a notice of appeal taken from that prior sentence. Thus, the contention is without legal, as well as factual, basis.

Moreover, there is no duty on the part of defense counsel to elicit a defendant's desires in regard to an appeal. It is beyond dispute that a defendant has an absolute right to a direct appeal. Pa.Constitution, Article V, sec. 9. Furthermore, it is clear that the ultimate decision of whether to do so must be made by the defendant and not counsel. *Commonwealth v. Hertzog*, 492 Pa. 632, 425 A.2d 329 (1981) (citing cases); *Commonwealth v. Stokes*, 294 Pa.Super. 529, 440 A.2d 591 (1982). It is also well-settled

that a defendant may knowingly and intelligently waive his right to appeal. *See Stokes, supra; Commonwealth v. Mika,* 277 Pa.Super. 339, 419 A.2d 1172 (1980). Thus, it is both the right and the responsibility *of the defendant* to determine whether a direct appeal should be taken. Therefore, the appellant's first contention on appeal is without merit.

■ The appellant's second contention on appeal is that the PCHA court should not have addressed the underlying merits of the appeal. It is true that where the appellant has shown that he was wrongfully denied his right to appeal, the question of whether his appeal is meritorious is to be decided on the appeal to which he has been entitled all along and not by the PCHA court. *Commonwealth v. Miranda,* 296 Pa.Super. 441, 442 A.2d 1133 (1982); *See also Ritchie, supra.* However, as the appellant was *not* wrongfully denied his right to appeal, the cases cited do not apply, and the contention is without merit.

■ The appellant's third contention on appeal is that resentencing counsel was ineffective for failing to object to entry of the guilty plea where the District Attorney misstated the definition of rape in the plea colloquy. The appellant is correct, the District Attorney misstated the elements of rape when he defined sexual intercourse in the terms of slightest "touching," rather than slightest "penetration." (Re-Sentencing Transcript at 10). The colloquy was, therefore, defective.

However, in *Commonwealth v. Newell,* 486 Pa. 474, 406 A.2d 733 (1979), our Supreme Court held that guilty plea counsel was not ineffective in failing to attack a defective colloquy, even though there were valid grounds to do so, because the record demonstrated that the defendant was satisfied with the favorable plea bargain which had been negotiated.

The law governing this case has been precisely stated as follows:

The record shows that appellant's counsel negotiated a favorable plea bargain, and appellant understood the bargain and was satisfied to accept it rather than go to trial. In these circumstances counsel's failure to challenge the defective colloquy had a reasonable basis designed to effectuate appellant's interests. Accordingly, counsel was not ineffective.

*Commonwealth v. Weiss,* 289 Pa.Super. 1, 432 A.2d 1020 (1980) (Concurrence per Spaeth, J.); *as cited in Commonwealth v. Burno,* 310 Pa.Super. 564, 456 A.2d 1080 (1983).

In the instant case, counsel for the appellant succeeded in negotiating for the appellant a very favorable plea bargain. The appellant was convicted of four major felonies. He pled guilty to two additional felonies and a misdemeanor. Still, the appellant received only concurrent terms of probation on four of the six felonies, including both of the felony convictions which were based upon the contested plea. Each of the felonies had potential penalties of twenty (20) years imprisonment and up to twenty-five thousand dollar ($25,000) fines.

There is no question as to the favorable nature of the bargain, or as to the appellant's understanding and acceptance of the bargain. The re-sentencing transcript reveals an extensive discussion of the bargain. (Re-Sentencing Transcript 6–9). Furthermore, the record contains the "Defendant's Statement of Understanding of Rights Prior to Guilty Plea," which is signed by the trial judge, the prosecutor, the defendant's attorney, and the defendant. This document is dated January 18, 1980, and provides in pertinent part:

8. I understand that the maximum sentence for the crime to which I am pleading guilty is: Ct. 1 Rape; Felony 1st Degree $25,000/20 years; Ct. 2 Burglary; Felony 1st Degree $25,000/20 years; Ct. 3 Simple Assault; Misdemeanor 2nd Degree $5,000/5 years.

9. I certify and understand that no plea bargain was made that led to this plea of guilty, ..., Except:

Recommend concurrent time with Docket No. 1030 of 1978 and Docket No. 273 of 1979.[6]

The bargain was favorable to the appellant, and it was fully explained to the appellant prior to its acceptance by both the appellant and the court. His contention on appeal is, therefore, without merit.

■ The appellant next contends that the trial court erred in not granting a mistrial where a juror had read a prejudicial newspaper article. The PCHA court found that the contention was without merit as "the situation fell squarely within the ambits of pretrial publicity standards enunciated in many cases, including *Commonwealth v. Hoss,* 469 Pa. 195, 364 A.2d 1335 (1976)." While we agree, we need not decide the issue on that basis, as the issue was waived by the appellant's knowing and intelligent waiver of his right to a direct appeal from judgment of sentence. *Commonwealth v. Hayes,* 462 Pa. 291, 341 A.2d 85 (1975); *Commonwealth v. Via,* 455 Pa. 373, 316 A.2d 895 (1974).

The appellant next contends that, "Detective Stazer was improperly examined on redirect beyond the scope of the previous examination in the trial at 1030 of 1978, and counsel was ineffective in not objecting." (Appellant's Brief at 26).

We note that the appellant neither briefed nor argued this issue before the PCHA court. Nor was this issue raised or briefed by prior counsel.[7] Appellant's PCHA counsel stated:

6. This document also contains each of the warnings mandated by *Commonwealth v. Willis,* 471 Pa. 50, 369 A.2d 1189 (1977).

7. In *Commonwealth v. Prowell,* 249 Pa.Super. 435, 378 A.2d 374 (1977), this Court recognized "the inherent conflict of loyalties to one's client on one hand and to one's associates on the other," where an attorney is faced with the dilemma of whether or not to raise issues of alleged ineffective assistance of counsel on the part of an associate with whom counsel maintains a continuing professional relationship.

In *Commonwealth v. Hill,* 302 Pa.Super. 377, 380, 448 A.2d 1090, 1092 (1982), this Court applied the reasoning in *Prowell* and held that "[i]neffective assistance of counsel, therefore, must be asserted at the

I did add a couple of other allegations, paragraph ten and paragraph eleven about objecting to evidence but, again, that is all a matter of what is on the record and I don't think the testimony is needed for that.

(Transcript of PCHA Hearing at 5).

■ The appellant failed to present to the PCHA court any evidence that prior counsel had no reasonable basis for his alleged ineffective conduct. The appellant presented no argument whatsoever in this regard. Such failure is fatal to the appellant's claim. *See Commonwealth v. Williams*, 314 Pa.Super. 355, 460 A.2d 1178 (1983); *Commonwealth v. Brown*, 313 Pa.Super. 256, 459 A.2d 837 (1983); *Commonwealth v. Bowers*, 245 Pa.Super. 214, 369 A.2d 370 (1976). "Bald assertions of ineffectiveness have never been sufficient to warrant relief in this Commonwealth." *Williams*, 314 Pa.Superior Ct. at 361, 460 A.2d at 1181.

"Counsel who is alleging ineffectiveness must set forth an offer to prove at an appropriate hearing sufficient facts upon which a reviewing court can conclude that trial counsel may have, in fact, been ineffective. This Court will no longer consider claims of ineffective assistance of counsel in the abstract." *Pettus, supra*, 492 Pa. at 563, 424 A.2d at 1335.

■ The appellant now contends that the PCHA court erred in finding that the trial counsel was not ineffective and presents legal argument for the first time in support of his contention. To accept this new theory we would have to

first stage at which the party is represented by counsel not associated with the same public defender's office."

Though prior counsel in the instant case were all members of the same public defender's office, trial counsel was no longer associated with the public defender's office when re-sentencing counsel began his representation of the appellant. Under these facts, the conflict identified in *Prowell* and *Hill* does not exist.

Because re-sentencing counsel and trial counsel were *not* associated at the time of re-sentencing counsel's representation of the appellant, it is apparent that the issue of trial counsel's alleged ineffectiveness was not raised at the earliest possible stage of the proceedings as required by *Commonwealth v. Glass*, 486 Pa. 334, 405 A.2d 1236 (1979). However, as neither party has briefed or argued this issue, we decline to decide the appellant's contentions upon these grounds.

ignore the well-settled rule that appellate courts should not consider theories and issues not posited or advanced in the court below. *Commonwealth v. Hughes,* 480 Pa. 311, 389 A.2d 1081 (1978); *Commonwealth v. Williams,* 476 Pa. 557, 383 A.2d 503 (1978). We reject the appellant's argument: first, because it is improper to raise such argument for the first time on appeal; and secondly, because the contention is without merit.[8]

■■■ It is true that one who calls a witness is generally required to elicit on his first direct examination all that is wished to be proved by that witness. *Catina v. Maree,* 498 Pa. 443, 447 A.2d 228 (1982). However, "[i]t is clear that the trial judge has wide discretion to vary the normal order of proof and may permit a party to bring out on redirect examination relevant evidence which inadvertently the party failed to bring out on direct." *Commonwealth v. Brown,* 462 Pa. 578, 590, 342 A.2d 84, 91 (1975); McCormick, Evidence § 32, at 69 (West 3rd Ed.1984).

■■■ Generally, the order in which testimony is admitted is within the discretion of the trial court, and a very gross abuse of this discretion will have to be manifested to induce a reversal. *Dosch v. Diem,* 176 Pa. 603, 35 A. 207 (1896); *See also Commonwealth v. Crosby,* 450 Pa. 68, 297 A.2d 114 (1972); *Knoble v. Ritter,* 145 Pa.Super. 149, 20 A.2d 848 (1941); *Koch v. Ziegler,* 130 Pa.Super. 158, 196 A.2d 562 (1938) (court has wide discretion as to order in which evidence is received, and as to whether case shall be reopened to allow more testimony).

The rationale behind the trial court court's broad discretion is explained by Professor Wigmore as follows:

> It is obvious that, while the usual order for introducing topics of evidence and witnesses is a desirable thing, a variation from that order, which is often equally desirable, will not necessarily cause direct harm; it can do so only where it tends to confuse the jury, or where it

---

8. The first reason precludes success on this appeal, the second precludes re-litigation of this issue in a subsequent appeal.

misleads the opponent and finds him unprepared to meet it. Moreover, the necessity for such a variation and likelihood that it will confuse or mislead must depend entirely upon the particular circumstances of each case. Accordingly, it is a cardinal doctrine, applicable generally to all of the ensuing rules, that they are not invariable, that they are directory rather than mandatory, and that an *alteration of the prescribed customary order* is always allowable *in the discretion of the trial court.*

6 Wigmore, Evidence § 1867 at 655–56 (Chadbourn rev. 1976) (footnote omitted) (emphasis supplied).

With respect to redirect examination, specifically, Professor Wigmore explained:

... inadvertent omissions constantly and unavoidably occur; and repetitions become desirable sometimes for clearness' sake. The chief danger to be guarded against is the unfair misleading of the opponent, who may have dismissed his own witnesses.

Accordingly, while a recall may probably not be demanded as of right, it is conceded that allowance of recall, upon the general principle (§ 1867 *supra*), is within the trial court's discretion.

6 Wigmore, Evidence § 1898 at 741 (Chadbourn rev. 1976) (footnote omitted).

Without the benefit of argument or briefs, the PCHA court nonetheless proceeded to review the record and reached the following conclusion:

Because the detective's testimony on direct and redirect concerned entirely different evidentiary matters relating to separate criminal offenses, there was nothing upon which defense counsel could have based a proper objection. Therefore, counsel was not ineffective and defendant's argument is without merit.

PCHA court opinion at 15. We agree.

Detective Stazer testified on direct examination regarding the manner in which certain physical evidence was collected, marked, and transported to the state police crime lab. On

redirect, Detective Stazer testified as to the manner in which latent fingerprints were collected at the scene of the crime, marked, and transported to the F.B.I. for comparison with the appellant's known fingerprints.

The two intervening witnesses were Mr. John Robertson and Detective Raymond F. King. Mr. Robertson, a criminologist at the state police crime lab, testified regarding tests conducted on the physical evidence which had been sent to the crime lab, and the relationship of the test results to the identification of the perpetrator of the crime. Detective King testified regarding the fingerprinting of the appellant and the transporting of the appellant's known prints with the latent prints to the FBI for comparison.

█ We cannot find that counsel was ineffective for failing to object to Detective Stazer's testimony. There was no unfair prejudice created by the order in which the evidence was presented. There is no indication of "sandbagging" or improper motive. In short, the only prejudice alleged by the appellant is the denial of the benefit of prosecution's inadvertent error.

The fingerprint evidence was otherwise admissible, relevant, and highly probative evidence. Thus, while a technical objection based upon *Cantina* might have been made by counsel, the facts and circumstances of this case would clearly have called for the Court to exercise its discretion to allow the testimony.[9]

It is well-established that it is not the function of appellate courts to second-guess the tactical decisions of the trial counsel or to employ a hindsight evaluation of the record in determining whether an appellant received effective assistance of counsel. *See Commonwealth v. Burton,* 491 Pa. 13, 417 A.2d 611 (1980); *Commonwealth v. Sherard,* 483 Pa. 183, 394 A.2d 971 (1978). Where, as here, counsel must choose between a doubtful objection and the certainty of heightened attention to damaging testimony, his decision is

9. Indeed, it may have been an abuse of discretion for the court not to have allowed the testimony on redirect. *See Commonwealth v. Staten,* 350 Pa.Super. 173, 504 A.2d 301 (1986).

tactical and not subject to appellate review on ineffectiveness grounds. Thus, appellant's contention is without merit.

Finally, the appellant raised the following additional questions for review:

4. Was counsel ineffective for failing to set forth a post-trial motion at No. 1030 of 1978 the allegation that the search and seizure of the defendant's person, hair, and clothes and blood samples was in violation of the Fourth and Fifth Amendments of the Constitution of the United States and the analogous provisions of the Pennsylvania Constitution;

6. Was counsel ineffective in the proceeding at No. 273 of 1979 by not objecting to hearsay testimony of a physician who described what the alleged victim told her about the attack;

7. Did the trial court err in failing to grant defendant's application and dismissed it based upon Rule 1100 in the proceeding at No. 272 of 1979;

8. Did the trial court err in failing to grant defendant's Motion for a mistrial based upon references during the trial to "photos," which implied mug shots and therefore a prior record; and

10. Did the trial court err in failing to grant a mistrial as a result of prejudicial and inflammatory comments of the District Attorney in the proceeding at No. 1030 of 1978.

Appellant's brief at 3–5. (quoted *verbatim*).

The appellant has neither briefed nor argued these issues in this Court; thus, the issues are deemed to have been waived. *See Commonwealth v. Bossick,* 305 Pa.Super. 196, 451 A.2d 489 (1982); *Commonwealth v. Sanford,* 299 Pa. Super. 64, 445 A.2d 149 (1982). Furthermore, the issues alleging error on the part of the trial court were waived by the appellant's knowing and intelligent waiver of his right to litigate said issues on direct appeal. *Hayes, supra; Via, supra.* Finally, we note that the underlying merits of each of these issues were addressed by the learned PCHA judge

and that each of the issues was correctly and adequately disposed of in his opinion below.

For the foregoing reasons the Order is affirmed.